UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA SANDIFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 08-cv-1183 |
| v. | ) |
| | ) Judge John W. Darrah |
| FREEDOM MORTGAGE CORP.; | ) |
| INDYMAC BANK, F.S.B.; and | ) |
| DEUTSCHE BANK NATIONAL | ) |
| TRUST CO., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Theresa Sandifer, brought this action under the Truth in Lending Act of 1968 ("TILA"), codified at 15 U.S.C. § 1601 *et seq.*, seeking to rescind a refinanced mortgage on her home and also seeking statutory damages and attorney's fees. The action was brought against three defendants, each of whom purportedly have or had an interest in the mortgage loan: Freedom Mortgage Corp. ("Freedom"); Deutsche Bank National Trust Co. ("Deutsche Bank"); and IndyMac Bank, F.S.B ("IndyMac"). The Federal Deposit Insurance Corporation ("FDIC") was later substituted for IndyMac pursuant to Federal Rule of Civil Procedure 25(c). Each of the four parties filed a motion for summary judgment, and all four motions are presently before the Court.

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.[1]

On or about November 30, 2004, Sandifer refinanced the existing mortgage on her principal residence in Chicago, Illinois, where she currently resides. (Freedom 56.1(a) ¶¶ 1, 8.) Sandifer entered a loan agreement with Freedom to borrow $147,000 secured by a mortgage on Sandifer's residence (the "Mortgage Loan"). (*Id.* ¶ 8.)

At the closing on November 30, 2004, Sandifer was presented with and executed the following documents: (a) a HUD-1 Settlement Statement, (b) a Federal Truth in Lending Disclosure Statement ("TIL Disclosure"), (c) an interest-only Adjustable Rate Note ("ARN"), (d) a Mortgage, (e) an Agreement Concerning the Nonrefundability of Advance Fees, (f) a Notice of Right to Cancel, and (g) an Appraisal Disclosure. (*Id.* ¶ 9.)

The following fees were reflected on the HUD-1 Settlement Statement: Origination Fee of $3,675.00; Application Fee of $350.00; Tax Service Fee of $101.00; Underwriting Fee of $500.00; Flood LOL Fee of $22.00; Courier Fee of $22.00; MERS Registration Fee of $3.95; Processing Fee of $250.00; Document Preparation Fee of $250.00; Settlement Fee of $375.00; Wire Fee of $75.00; Closing Coordination Fee of

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

2

$150.00; and Madison Notary Fee of $195.00. (*Id.* ¶ 10.) These fees (a total of $5,968.95) were included, as required, in the total figure for prepaid finance charges on the Disclosure Statement. (*Id.* ¶ 10.) The Disclosure Statement actually identifies $6,110.04 in prepaid finance charges — a $141.09 overstatement. (*Id.* ¶ 10.)

Freedom's interest in the Mortgage Loan was subsequently assigned to Deutsche Bank. (Deutsche Bank 56.1(a) ¶ 9.) On or about July 18, 2007, Deutsche Bank, as trustee under a pooling and servicing agreement with IndyMac, filed a foreclosure action against Sandifer. (Freedom 56.1(a) ¶ 15.)

By letter dated November 13, 2007, Sandifer demanded rescission of the loan for alleged TILA violations. (Deutsche Bank 56.1(a) ¶ 13.) Prior to that, she never talked to anyone at Freedom, Deutsche Bank, or IndyMac about rescinding or cancelling her loan; nor was she prevented from doing so. (*Id.* ¶¶ 25, 26.)

On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac and appointed the FDIC as receiver for IndyMac. (FDIC 56.1(a) ¶ 10.) That same day, the OTS authorized the creation of a new institution, IndyMac Federal Bank, FSB ("IndyMac Federal"), appointed the FDIC as conservator for IndyMac Federal, and transferred the bulk of IndyMac's assets and deposit liabilities to the FDIC as conservator of IndyMac Federal. (*Id.* ¶ 10.) On March 19, 2009, the OTS closed IndyMac Federal and appointed the FDIC as its receiver; substantially all of IndyMac Federal's assets and certain liabilities were then transferred to OneWest Bank, FSB ("OneWest"). (*Id.* ¶ 11.)

On November 12, 2009, the FDIC Board of Directors formally determined that the assets of IndyMac are insufficient to make any distribution on claims of general

unsecured creditors and, therefore, have no value. (*Id.* ¶ 12.) Notice of this "worthlessness determination" was published in the Federal Register on November 18, 2009. (*Id.* ¶ 13.) The FDIC has no ownership interest in the Mortgage Loan. (*Id.* ¶ 14.)

Sandifer has not made a payment toward the Mortgage Loan since 2007, and she does not have sufficient assets to tender the money Freedom lent to Sandifer under the Mortgage Loan if rescission of the loan is ordered. (Freedom 56.1(a) ¶¶ 16, 18.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)).

A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be

4

such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

### *Freedom's and Deutsche Bank's Motions for Summary Judgment*

Sandifer's Amended Complaint contains two alleged grounds for rescission: (1) that Freedom understated the finance charge on the TIL Disclosure provided to Sandifer at closing and (2) that Freedom did not provide Sandifer with a clear and conspicuous notice of her right to cancel the transaction. In her opposition to Freedom's and Deutsche Bank's Motions, Sandifer states a third theory of recovery: that the payment schedule contained on the TIL disclosure is inaccurate. As discussed below, Sandifer has not presented sufficient evidence to support a claim for violation of TILA under any of her three theories.

*First*, Freedom did not understate the finance charge on the TIL Disclosure. TILA and its implementing regulation, Regulation Z, require that certain material disclosures be made to a consumer seeking an extension of credit secured by real property. Among other things, creditors must disclose the applicable "finance charge"

5

for a loan, which is defined as "the sum of all charges payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 15 U.S.C. § 1605(a). Generally speaking, the finance charge is the interest paid over the life of the loan plus any prepaid finance charges. *See* 12 C.F.R. § 226.18(b)(1)-(3).

Regulation Z allows room for small errors in the calculation of the finance charge. After a foreclosure proceeding has been initiated on the real estate securing the extension of credit, "the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as accurate . . . if the amount disclosed as the finance charge . . . is greater than the amount required to be disclosed" or is understated by no more than $35.00." 12 C.F.R. § 226.23(h)(2)(i)-(ii).

In this case, the undisputed facts show that the disclosure statement identified $6,110.04 in finance charges. The actual finance charges totaled $5,968.95. Sandifer admits that the disclosed finance charge was greater than the amount required to be disclosed. An overstated finance charge is not a TILA violation. Thus, Sandifer cannot prevail on her theory that Freedom misstated the finance charge.

*Second*, Sandifer cannot establish she did not receive proper notice of her right to rescind the Mortgage Loan. TILA and Regulation Z require clear and conspicuous notice of the right to rescind in any transaction subject to rescission. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose information required by 12 C.F.R. § 226.23(b)(1)(i)-(v) and 15 U.S.C. § 1635(a). To satisfy the disclosure requirements of 12 C.F.R. § 226.23(b)(1), the creditor must

provide the appropriate model form in Appendix H of 12 C.F.R. § 226 or one that is substantially similar. 12 C.F.R. § 226.23(b)(2). If a creditor fails to provide a proper form, the borrower may rescind the loan at any time up to three years from the date on which the transaction is consummated. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).[2]

The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer. *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (*Handy*). Whether a particular disclosure is clear for purposes of TILA is a question of law that "depends on the contents of the form, not on how it affects any particular reader." *Id.* "Where more than one reading of a rescission form is "plausible," the form does not provide the borrower with a clear notice of what her right to rescind entail[s]." *Id.* at 764 (citing *Porter v. Mid-Penn Consumer Disc. Co.*, 961 F.2d 1066, 1077 (3d Cir. 1992)).

Freedom provided Sandifer with the Appendix H-8 Rescission Model Form found in 12 C.F.R. § 226, and Sandifer signed it. Although Sandifer admits receiving and signing the acknowledgement, she argues that another form she received, the "Agreement Concerning the Nonrefundability of Advance Fees" ("Nonrefundability Agreement"), makes the notice of her right to rescission unclear.

---

[2] "The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3). Among other things, "material disclosures" include "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, and the payment schedule." 12 C.F.R. § 226.23(a)(3) n.48.

7

The Nonrefundability Agreement states that an application fee of $350 is nonrefundable if the loan fails to close, including if Sandifer withdraws her loan application. (*See* Ex. D to Am. Compl.) The agreement also provides that if the loan does close (i.e., the funds are provided to the borrower), the application fee will be credited against the actual cost incurred by Freedom in preparing the application. (*Id.*) If the fee paid is greater than the actual cost incurred by Freedom, the surplus will be credited towards other fees. (*Id.*)

Sandifer argues that the Nonrefundability Agreement's language regarding her application fee in the event she withdraws her loan application renders the Notice of the Right to Cancel unclear. Sandifer contends that "withdraw" invokes a comparison to a consumer's right to *cancel* or *rescind*. But in the Nonrefundability Agreement, the word "withdraw" is followed by "your loan *application*." (*See* Ex. D to Am. Compl. (emphasis added).) A loan must close before a right to rescind arises. Because the application fee is only nonrefundable if the loan fails to close, the Nonrefundability Agreement does not interfere with nor render the Notice of the Right to Cancel unclear.

Although the Seventh Circuit has yet to address the specific issue of whether a separate document or representation can render a model disclosure form not clear and conspicuous, *Sampanetti v. E\*Trade Mortgage Corp.*, No. 02 C 3513, 2002 U.S. Dist. LEXIS 21443 (N.D. Ill. Oct. 31, 2002) (*Sampanetti*), is instructive. Sampanetti refinanced his home with E\*Trade. *Id.* at \*2. He signed a "40-Day Lock-In Disclosure and Agreement" ("Lock-In Agreement") and paid a $400 interest-rate lock-in fee. *Id.* at \*2. The Lock-In Agreement stated in pertinent part:

8

> If you provide [E*Trade] with all documentation requested of you (within 3 calendar days) to complete the underwriting review of your loan application . . . and, following such review, [E*Trade] does not approve your loan for closing, based on income qualifying or credit, the lock-in fee will be refunded to you. If your loan fails to close for any other reason ([sic] including your decision to *cancel* the application, then the lock-in fee will not be refunded to you.

*Id.* at *2. (emphasis added).

Sampanetti closed his loan and then filed suit against E*Trade, alleging that the Lock-In Agreement was contrary to the right of rescission afforded by TILA and that it contradicted Regulation Z's disclosure requirements. *Id.* at *3. E*Trade filed a motion to dismiss for failure to state a claim, contending that the Lock-In Agreement applied only to the situation of a loan's failing to close, and that if a loan has failed to close, there is no transaction to "rescind"; thus, the right to rescind could not be affected. *Id.* at *5-6.

The court granted E*Trade's motion to dismiss and held:

> TILA and Regulation Z do not clearly indicate that the concept of rescission, or the language requiring a refund upon rescission, applies to a situation where a loan has not yet closed. Therefore, a holding that the rescission and refund provision apply to such a situation would constitute an impermissible expansion of the statute and the regulations.

*Id.* at *7.

Sandifer argues that *Jones v. E*Trade*, 397 F.3d 810 (9th Cir. 2005) (*Jones*), supports her argument that the Nonrefundability Agreement rendered the notice of her right to rescind misleading. It does not. *Jones* addressed the very same Lock-In Agreement at issue in *Sampanetti*. *Compare Jones*, 397 F.3d at 814, *with Sampanetti*, 2002 U.S. Dist. LEXIS 21443, at*2. After Jones closed his loan, he discovered that E*Trade was offering lower interest rates than he had received. *Jones*, 397 F.3d at 811-

812. Before Jones's right to rescind had expired, Jones asked E*Trade for a lower interest rate. *Id.* at 812. A representative at E*Trade told Jones that if he invoked Regulation Z and rescinded the loan, he would lose the $400 Lock-in Agreement. *Id.* Jones proceeded with the loan and then filed suit against E*Trade, alleging that E*Trade had failed to provide a "clear and conspicuous" disclosure of rescission rights required by 15 U.S.C. § 1635(a). *Id.*

The Ninth Circuit agreed. *Id.* at 813. In holding for the borrower, the court specifically based its decision on the fact that E*Trade's representative told Jones he would lose the lock-in fee if he rescinded the loan. *Id.* The court held that this oral representation – which expressly contradicted Jones's rights under TILA and appeared to be made pursuant to a corporate policy – made Jones's right to rescind unclear. *Id.* The court did not address whether the written Lock-In Agreement itself had any adverse effect on the notice of Jones's right to rescind.

Unlike in *Jones*, there was no representation of any kind made by Freedom, Deutsche Bank, or IndyMac after Sandifer closed the loan. Rather, as in *Sampanetti*, it would be clear to the ordinary consumer that the Nonrefundability Agreement only applies before the loan closes. Therefore, Sandifer was informed she would forfeit her application fee if she withdrew her loan application before the loan closed but would be entitled to recover her application fee if she later rescinded a consummated loan.

Thus, the Nonrefundability Agreement does not render unclear the Notice of Right to Cancel provided by Freedom to Sandifer, and Sandifer cannot prevail on her theory that she did not have clear notice of her right to rescind the Mortgage Loan.

10

*Third,* Sandifer's assertion that Freedom provided Sandifer with an inaccurate payment schedule on the TIL Disclosure is untimely. Sandifer raised this argument for the first time in her Combined Response to Defendants' Motions for Summary Judgment. In her Complaint and Amended Complaint, Sandifer does not allege any facts indicating a miscalculation in the payment schedule. All pleadings in this case were to be amended by September 30, 2008; discovery closed on March 2, 2009. The argument appeared for the first time in Sandifer's Opposition to Defendants' Motions for Summary Judgment on February 5, 2010.

Plaintiffs are required to plead sufficient facts to support their theories. *Buacciarell-Tieger v. Victory Records, Inc.,* 488 F. Supp. 2d 702, 714 (N.D. Ill. 2007). A plaintiff cannot create a genuine issue of material fact, thereby precluding summary judgment, by raising facts for the first time in response to defendant's motion for summary judgment which were not raised in the complaint. *Bassiouni v. CIA,* No. 02 C 4049, 2004 U.S. Dist. LEXIS 5290, *25 (N.D. Ill. Mar. 30, 2004). Nor can a plaintiff amend her complaint through arguments in her brief in opposition to a motion for summary judgment. *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir. 1996).

Sandifer is attempting to introduce a new legal theory that was not supported by any allegations in her Amended Complaint.[3] Sandifer argues in her Combined Response to Defendants' Motions for Summary Judgment that her Complaint and Amended Complaint alleged an inaccurate TILA Statement and that the fact that there are other

---

[3] Sandifer also contends that Defendants were on notice of this theory because of a settlement letter she sent *after* the close of discovery. This argument is meritless.

11

inaccuracies with the TILA Statement is irrelevant. This is incorrect. Sandifer specifically alleged that there were two grounds for rescission: an inaccurate disclosure of the finance charge and a lack of proper notice of her right to cancel.

No reasonable interpretation of Sandifer's Amended Complaint would put Defendants on notice that the payment schedule in the TIL Disclosure is inaccurate. Accordingly, Sandifer is barred from raising her new legal theory that the payment schedule given to her was inaccurate.

Because Sandifer cannot prevail on any of the three theories discussed above, Freedom's and Deutsche Bank's Motions for Summary Judgment are granted. It is thus unnecessary to address Freedom's and Deutsche Bank's remaining arguments in support of their Motions for Summary Judgment.

*Sandifer's Motion for Summary Judgment*

In her own Motion for Summary Judgment, Sandifer does not address the argument that Freedom understated the finance charge; nor does she address her theory that the payment schedule on the TIL Disclosure is inaccurate. Instead, Sandifer only argues that the notice regarding her right to rescind the Mortgage Loan was not "clear and conspicuous." As discussed above, Sandifer cannot establish any TILA violations. Therefore, she has no right to rescind the Mortgage Loan, and her Motion is denied.[4]

---

[4] In her Motion for Summary Judgment, Sandifer also argues that Deutsche Bank is liable as an assignee and that rescission should be ordered without regard for her ability to tender the loan proceeds. These arguments are moot in the absence of any cognizable TILA claim.

12

### FDIC's Motion for Summary Judgment

Sandifer's Complaint alleges that IndyMac is affiliated with Freedom and that IndyMac claimed an interest in the Mortgage Loan at the time of the Complaint. As discussed above, IndyMac's assets and liabilities were transferred to the FDIC and then to OneWest. Following those transfers, the FDIC Board of Directors made an official "worthlessness determination" upon determining that the assets of IndyMac are insufficient to make any distribution on claims of general unsecured creditors. Therefore, the FDIC moves for summary judgment, asserting that there is no justiciable case or controversy between Sandifer and the FDIC or, alternatively, that the case should be dismissed on prudential mootness grounds because continued litigation of a claim for which no recovery is possible would be an exercise in futility. Sandifer did not respond to the FDIC's Motion.

In enacting the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), Congress has expressly limited the liability of the FDIC as receiver for a failed financial institution, such as IndyMac, to the assets of the receivership estate. *See* 12 U.S.C. § 1821(i)(2); *see also First Indiana Fed. Sav. Bank v. FDIC*, 964 F.2d 503, 507 (5th Cir. 1992) (*First Indiana*) ("Congress unequivocally expressed its intent to limit the maximum liability of the FDIC to the amount the claimant would have received in a liquidation under federal priority regulations."). This limitation reflects Congress's policy judgment that creditors of a failed depository institution should "look only to the assets of the institution for recovery of their losses, and not to the taxpayers." *First Indiana*, 964 F.2d at 507. Where there are insufficient receivership assets to satisfy

general creditors' claims, 12 U.S.C. § 1821(i)(2) mandates that general creditors receive nothing. *Id.*

Here, the FDIC has officially determined that there are no assets for any claims of general unsecured creditors. In its Motion for Summary Judgment, the FDIC has identified numerous cases from multiple circuits in which similar claims were dismissed for lack of a justiciable case or controversy, *see, e.g., Heinrichs v. Valley View Dev.*, 474 F.3d 609, 615 (9th Cir. 2007) (dismissing for lack of subject-matter jurisdiction claims against FDIC as receiver where "[n]o assets remain[ed] in the receivership to satisfy [the plaintiff's] claim, thus rendering the claim moot"), or on grounds of prudential mootness, *see, e.g., 281-300 Joint Venture v. Onion*, 938 F.2d 35, 38-39 (5th Cir. 1991) (holding that dismissal of claims against receiver was warranted on prudential grounds where it was determined that general creditor claims against the receivership were worthless).

The FDIC also identifies numerous cases in at least five circuits where the court has expressly held that 12 U.S.C. § 1821(j) specifically prohibits courts from granting the relief of rescission against the FDIC as receiver. *See, e.g., Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 715 (8th Cir. 1996) ("Because FIRREA grants the FDIC the power to 'collect all obligations and money due the institution,' 12 U.S.C. § 1821(d)(2)(B)(ii), rescinding the agreements would act as an impermissible restraint on the ability of the FDIC to exercise its powers as receiver.").

Sandifer did not respond to the facts and arguments set forth in the FDIC's Motion for Summary Judgment. Accordingly, the FDIC's Motion is granted.

## CONCLUSION

For the foregoing reasons, Sandifer cannot prove any cognizable cause of action under TILA; and Freedom, Deutsch Bank, and the FDIC are entitled to judgment as a matter of law. Sandifer's Motion for Summary Judgment is denied in its entirety; and Freedom's, Deutsche Bank's, and the FDIC's Motions for Summary Judgment are granted. Judgment is therefore entered in favor of Freedom, Deutsche Bank, and the FDIC and against Sandifer on her claims under TILA.

Date: April 8, 2010

JOHN W. DARRAH
United States District Court Judge